STATE TRAILER SALES, INC.

*vs.*

FIRST NATIONAL BANK OF PITTSFIELD

Somerset.   Opinion, December 11, 1962.

*Harry R. Coolidge,* for the defendant.

*Myer Marcus,*
*Leonard M. Nelson,* for the plaintiff.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   DUBORD, J., did not sit.

TAPLEY, J. On report. The case is reported to this court by authority of Rule 72 of Maine Rules of Civil Procedure. The action is presented upon the complaint, answers and agreed statement of facts. The pre-trial order is considered to be the agreed statement of facts. Leroy W. Lander, Sr. and Elmira Louise Lander borrowed the principal sum of $4,000.00 from the First National Bank of Pittsfield, Maine (hereinafter referred to as the "Bank"). The Landers on November 1, 1955 executed a mortgage deed conveying two parcels of land, with the buildings thereon, to the Bank to secure their promissory note. The mortgage deed recited consideration of $4,000.00 and was to remain in full force and effect unless the Landers, "their heirs, executors or administrators pay to the said Bank, its successors or assigns, the sum of Four thousand dollars payable Two hundred fifty dollars each three months, the first payment to be April 1, 1956 and shall pay all other indebtedness owing by the mortgagors, and either of them, to said bank, now and hereafter contracted - - - - ."

On May 28, 1958 the Landers borrowed the principal sum of $2,000.00 from the plaintiff, State Trailer Sales, Inc., and delivered to the plaintiff their promissory note for $2,000.00 and a mortgage deed conveying the second parcel of land, with buildings thereon, described in the mortgage to the Bank. Plaintiff's mortgage was subject to that of the Bank. At this point the plaintiff stood in relation of second mortgagee to the Bank.

Subsequent to the creation of these two mortgages, the Landers became involved with the Bank in other financial transactions. On May 28, 1958 Roger Guptill and Priscilla Guptill borrowed $137.00 from the Bank, executing a chattel mortgage as security for the indebtedness. Leroy W. Lander, Sr. guaranteed payment of the obligation. The same situation applies where one Eugene Cowan on No-

vember 24, 1958 executed, in favor of the Bank, a chattel mortgage wherein the Landers guaranteed payment.

On December 1, 1958 the Landers borrowed the principal sum of $4,739.62 from the Bank and delivered to the Bank their promissory note for the amount of $4,739.62 purporting on its face to be a renewal of note #76518, the $4,000.00 note which was secured by the mortgage. On April 23, 1959 the Landers guaranteed the payment of an obligation of one Charlotte Hamilton to the Bank in the amount of $210.00.

Again in August of 1959 the Landers borrowed the principal sum of $810.00 and gave the Bank their promissory note for $810.00. Later, in the month of August, being the 26th, they borrowed the sum of $305.00 and gave the Bank their promissory note for this amount.

On January 19, 1960 the Bank gave the Landers notice of foreclosure of the mortgage.

The plaintiff, holder of the second mortgage, on January 18, 1961, through counsel, offered the Bank the sum of $5,000.00 to pay the amount due on the mortgage held by the Bank, expecting a refund from the Bank for any amount of the $5,000.00 which was in excess of the debt. The check was refused because the Bank claimed the sum was insufficient to pay the amount due, whereupon plaintiff again offered the check for $5,000.00 and a personal check of plaintiff's counsel in the sum of $839.03 which made up the total sum claimed to be due by the Bank under the terms of the mortgage. The Bank then gave the plaintiff an assignment of the mortgage with its subsisting rights of foreclosure and indorsed all notes which the Bank held given by Leroy and Elmira Lander as primary or secondary obligors.

The sum of $5,839.03 is claimed by the Bank to be due and secured by the mortgage which covers the indebtedness

of the Landers to the Bank, plus the amounts due on the various notes guaranteed by the Landers. The plaintiff takes the position that the Bank is entitled to $4,586.73 as being the amount stated in the mortgage from Landers to the Bank, plus interest, insurance premiums and cost of foreclosure, and it seeks by this action to recover the sum of $1,255.30, being the difference between the amount the bank was paid, over protest, and what it was entitled to under provisions of P. L., 1955, Chap. 380, as amended.

According to the pre-trial conference order, which is made a part of these proceedings as statement of facts, the parties have defined the issues as:

(1)    The applicability of Chap. 380, Sec. 19-H I (F) of P. L., 1955.

(2)    The amount due the defendant bank under the real estate mortgage of November 1, 1955.

Defense counsel, in his brief, raises another issue which was also argued. He contends that irrespective of whether the statute applies or not, plaintiff offered to pay the Bank $5,839.03 if it would execute and deliver an assignment of its mortgage with its rights of foreclosure; that the offer was accepted and the assignment, with rights of foreclosure, was executed and delivered to the plaintiff for a valuable consideration. He says these acts constituted a valid contract and that the plaintiff must be held to the contractual terms.

If the provisions of Chap. 380, Sec. 19-H I (F) of the P. L. of Maine of 1955 apply to a national bank as well as to a state bank, then the plaintiff is entitled to a judgment insofar as the statutory aspects of this case are concerned.

"F.    Any interest in real property which may now be mortgaged to a savings bank under the provisions of paragraphs A to E, inclusive, of this subsection may be mortgaged to secure existing

debts or obligations, to secure debts or obligations created simultaneously with the execution of the mortgage, to secure future advances necessary to protect the security and to secure future advances to be made at the option of the parties up to a total amount stated in the mortgage, and all such debts, obligations, and future advances shall, from the time the mortgage is filed for record as provided by law, be secured by such mortgage equally with, and have the same priority over the rights of all persons who subsequent to the recording of such mortgage acquire any rights in or liens upon the mortgaged real estate, as the debts and obligations secured thereby at the time of the filing of the mortgage for record; except that:

"The provisions of this paragraph shall apply to all banks and trust companies." P. L. of Maine of 1955, Chap. 380, at page 331.

National banks are subject to State regulations under some circumstances.

"The doctrine of noninterference by a state with the operations of a national bank protects the bank only from such legislation as tends to impair its utility as an instrumentality of the Federal government. A national bank is subject to the laws of the state in which it is located in respect of its affairs if such laws do not interfere with the purpose of its creation, tend to impair or destroy its efficiency as a Federal agency, conflict with the paramount laws of the United States, or discriminate against such national bank." 7 Am. Jur., Banks — Sec. 13, page 33.

"National banks are brought into existence under Federal Legislation, are instrumentalities of the Federal Government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their

efficiency as federal agencies or conflict with the paramount law of the United States." *First National Bank in St. Louis* v. *State of Missouri,* 263 U. S. 640 at 656.

A national bank is governed in its ordinary banking business by State laws which apply to other banks. *Prudden & Co.* v. *First Nat. Bank of Secaucus,* 170 A. 860 (N. J.).

Sec. 19-H I (F) of Chap. 380, P. L., 1955 specifies what banking institutions are subject to the act by providing "the provisions of this paragraph shall apply to all banks and trust companies." The provisions of the paragraph are regulatory in their nature and when applied to the operation of a national bank they do not impair or destroy the efficiency of the bank or are they in conflict with the laws of the United States affecting national banks.

If the Legislature intended that the statutory limitations should not apply to national banks, then it has passed discriminating legislation against State banks. We are of the opinion that the enactors of the statute never meant that it should be so interpreted that the national banks remain free of the restrictions, while the State banks are subject to them. The language used that the provisions "shall apply to all banks and trust companies" is plain, clear and unambiguous.

We hold that Sec. 19-H I (F), Chap. 380, P. L., 1955 applies to national banks and that the defendant bank statutewise is limited in its mortgage security to the principal amount of $4,000.00 as stated in the mortgage.

Counsel for the defendant bank contends, and so argues, that irrespective of whether the statute applies to a national bank, the plaintiff cannot recover because the assignment was made under such circumstances as to constitute a contract between the plaintiff and the Bank; that for the consideration of $5,839.03, paid by the plaintiff to the defend-

ant, the plaintiff received an assignment of the mortgage with subsisting rights of foreclosure. The Bank, in addition to assigning the mortgage, indorsed all notes which it held given to it by the Landers as primary or secondary obligors and delivered them to the plaintiff. The plaintiff, on the other hand, says that the amount over and above the $4,000.00, plus interest and costs of foreclosure, was paid under protest; that the overpayment was necessary to obtain the assignment of the mortgage which was needed to protect plaintiff's interest as subsequent mortgagee.

Counsel for the plaintiff bases his protest upon the applicability of Sec. 19-H I (F), Chap. 380, P. L., 1955.

> "In an action at common law for money had and received, protest alone does not preserve the right to recover if the circumstances show that there was no compulsion or coercion. In other words, there is no magic in the act of paying under protest and that fact alone, unaccompanied by other circumstances, is insufficient to convert a voluntary payment into an involuntary one so as to authorize recovery." *Baker* v. *Allen, et al.,* 66 S. E. (2nd) 618 at 622 (N. C.)

> "The mere fact that payment was made under express protest, is not sufficient to prevent the payment from being a voluntary one which cannot be recovered back. As stated in Pure Oil Co. vs. Tucker, 8 Cir., 164 F2d 945, 947: 'It is a universally recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance. This is true even though the payor makes the payment * * * under protest * * *.'" *Richfield Oil Corporation* v. *United States,* 248 F (2nd) 223.

The facts in the case of *Hess* v. *Cohen,* 45 N. Y. S. 934, concern the assignment of a mortgage. The defendant

Cohen was foreclosing a mortgage on plaintiff's premises. Plaintiff had arranged for a loan from a third person to pay the mortgage debt. An assignment of the mortgage was to be taken as security for the loan. The defendant agreed to assign the mortgage but when the parties met to conclude the agreement, defendant's attorney demanded that in addition to the mortgage debt plaintiff must pay defendant the sum of $20.00 alleged to have been loaned by the defendant to the plaintiff and that the assignment would not be made unless the amount was paid. Under protest the plaintiff paid it and then brought the action to seek its recovery, claiming that the $20.00 was paid under compulsion. The court said, on page 935:

" - - - - - , the party acted with full knowledge of all the facts, *and with the option either to refuse to yield to the exaction, and rest upon his legal remedies, or to submit for the sake of present advantage.* The payment was therefore as voluntary as any agreement for a price for what is desired or must be had. The necessities of one of the parties to a contract do not make the contract invalid." (Emphasis supplied.)

"As a general rule, in the absence of a statutory provision otherwise, a payment cannot be recovered back as being compulsory or involuntary by reason of the mere facts that it is paid unwillingly and that the payor at the time of payment makes a protest against the payment." 70 C. J. S., Payment, Sec. 153.

"Where a dispute arises and the debtor, who pays under protest, has at hand reasonable means of immediate and adequate relief other than by making the payment, his act is not one done under coercion. Therefore, where a person has time and opportunity to relieve himself from his predicament without making such a payment, by resort to ordinary legal methods, but nevertheless pays the money, the payment will be deemed voluntary,

and he cannot recover it." 40 Am. Jur. Payment, Sec. 183.

The plaintiff voluntarily placed himself in the position of a subsequent mortgagee. The mortgage is dated May 28, 1958 and describes a certain lot or parcel of land with the buildings thereon. The Bank's mortgage is dated November 1, 1955 and describes the same lot or parcel of land, with the buildings thereon, as does the subsequent mortgage and, in addition thereto, another lot or parcel of land, with the buildings thereon. On January 19, 1960 the Bank gave notice of foreclosure of its mortgage and previous to the expiration of period of redemption plaintiff sought assignment of the mortgage from the Bank.

Plaintiff, as a subsequent mortgagee, has only those rights to an assignment of the Bank's mortgage as are prescribed by the provisions of Sec. 24, Chap. 177, R. S., 1954, as amended:

> "When proceedings for the foreclosure of any prior mortgage of real estate have been instituted by any method provided by law, the owner of any subsequent mortgage of the same real estate or of any part of the same real estate may, at any time before the right of redemption from such prior mortgage has expired, in writing, request the owner of such prior mortgage to assign the same and the debt thereby secured to him, upon his paying to the owner of such prior mortgage, the full amount, including all interest, costs of foreclosure and such other sums as the mortgagor or person redeeming would be required to pay in order to redeem. If the owner of such prior mortgage neglects or refuses to make such assignment within a reasonable time after such written request, the owner of such subsequent mortgage may bring a civil action in the superior court for the purpose of compelling the owner of such prior mortgage to assign the same and the debt thereby secured, to him, the owner of such subsequent mortgage, upon

making payment. If the court, upon hearing, shall be of the opinion that the owner of such prior mortgage will not be injured or damaged in his property matters and rights by such assignment, and that such assignment will better protect the rights and interests of the owner of such subsequent mortgage, and that the rights and interests of any other person in and to the same real estate, or any part thereof, will not be prejudiced or endangered thereby, the court, in its discretion, may order and decree that such prior mortgage and the debt thereby secured, shall be assigned by the owner thereof to the owner of such subsequent mortgage upon his making payment as aforesaid. The time within which and the place where such payment shall be made shall be fixed by the court, *and if the parties are unable to agree upon the amount of such payment, the court shall fix and determine the amount."* (Emphasis supplied.)

Because of the divergent views of the applicability of the statute, Sec. 19-H I (F), Chap. 380, P. L., 1955, the parties could not agree on the amount due the Bank. Under these circumstances, the plaintiff had available the procedure prescribed by Sec. 24 of Chap. 177, as amended. The court would hear the contending parties and if the presiding justice was of the opinion (1) "that the owner of such prior mortgage will not be injured or damaged in his property matters and rights by such assignment;" (2) that such assignment will better protect the rights and interests of the owner of such subsequent mortgage;" (3) that the rights and interests of any person in and to the same real estate, or any part thereof, will not be prejudiced or endangered thereby," he then could, in his discretion, order the assignment. Should he find that an assignment was in order a determination of the amount due under the mortgage would be made and upon payment of the amount to the prior mortgagee order the assignment of the mortgage to the subsequent mortgagee.

The Bank was under no legal duty to assign the mortgage. It had the right to make its own terms of assignment unless plaintiff sought relief under Sec. 24. At this point the plaintiff had a choice, either to meet the financial requirements of the Bank, or to invoke the provisions of Sec. 24. A hearing on a complaint based on Sec. 24 would bring in issue the applicability of Sec. 19-H I (F) as well as a determination of the amount to be paid the Bank if the justice, in his discretion, decided the equities of the parties warranted an assignment.

Counsel for the plaintiff cites *Whitcomb* v. *Harris*, 90 Me. 206 in support of his contention that the plaintiff is entitled to recover what it claims to be an excessive payment. We distinguish the *Whitcomb* case from the case at bar. The *Whitcomb* case involves an action to recover an alleged overpayment in the redemption of a mortgage on real estate. The right to recover was statutory (R. S., 1883, Chap. 90, Sec. 22). The same statutory right of refund of an excess payment is now available under R. S., 1954, Chap. 177, Sec. 23. The circumstances of the case at bar are obviously not analogous to those in the *Whitcomb* case. In the *Whitcomb* case the *redemption* of mortgaged property was involved, while in the instant case an *assignment* is concerned. They are two separate and distinct types of transactions, both being regulated by statute.

In the instant case the plaintiff apparently was not content with a *redemption* and discharge of the Bank's first mortgage but rather aspired to secure by an *assignment* a lien upon the additional parcel of real estate securing the Bank's first mortgage. Redemption by the plaintiff obviously would have destroyed the mortgage lien upon the other additional parcel. Plaintiff by its contract with the Bank was relieved of any recourse to court under R. S., Chap. 177, Sec. 24 and received an assignment with a mortgage lien upon an additional parcel of real estate. The Bank

without obligation gave an assignment. There was contractual benefit to the plaintiff. *Congregation Beth Abraham* v. *People's Savings Bank,* 120 Me. 178.

Sec. 23 provides for an accounting in a suit for redemption of mortgaged premises and if the amount tendered to redeem is a larger sum than the person to whom it is tendered is entitled, then he must refund the excess. If he refuses so to do then an action at law is in order to recover the excess.

Under Sec. 24 a different situation obtains. The Legislature has made available a procedure in equity for one to seek an assignment with the equity court determining the amount to be paid the mortgagee if the assignment is allowed.

The remedies and procedures provided in Secs. 23 and 24 must be strictly adhered to and those applying to redemption of mortgages cannot be applied to assignments and the same, of course, is true where an assignment of a mortgage is concerned. The provisions of Sec. 23 cannot be read into those of Sec. 24. See *Bragg* v. *Pierce,* 53 Me. 65 and *Wilcox* v. *Cheviott,* 92 Me. 239.

Our decision is based not on our interpretation of Sec. 19-H I (F) but rather on the contractual relationship established by the parties, wherein for a good and sufficient consideration the plaintiff received from the Bank an assignment of a first mortgage affecting two parcels of property, together with all indorsed notes which the Bank possessed, given to it by Leroy and Elmira Louise Lander as primary or secondary obligors.

The entry will be,

*Judgment for the Defendant.*